UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.:

MICHELLE RUBENSTEIN,

    Plaintiffs,

v.

WOLF'S STEAKHOUSE, INC., a Florida corporation
and WILLIAM WOLF, individually,

    Defendants.
_____/

## COLLECTIVE ACTION COMPLAINT

Plaintiff, MICHELLE RUBENSTEIN, (herein referred to as "Plaintiff" and/or "RUBENSTEIN"), by and through her undersigned counsel, hereby files this Complaint against Defendants, WOLF STEAKHOUSE, INC. (hereinafter referred to as "STEAKHOUSE"), Florida Profit Corporation, and WILLIAM WOLF (hereinafter, "WOLF" and collectively, "Defendants"), and says:

## JURISDICTION AND VENUE

1. This action is brought against the Defendants pursuant to 29 U.S.C. § 201, et seq. (hereinafter the "Fair Labor Standards Act", the "FLSA" or the "Act"), and for violations under Florida common law.

2. Jurisdiction is conferred upon this Court pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 and §1367.

3. Venue is proper in the Southern District of Florida because Plaintiff was employed by Defendants in this District; because Defendants, at all material times, conducted and continue to conduct business in the Southern District of Florida; because the acts that give rise to Plaintiff's

claims within the Southern District of Florida; pursuant to 28 U.S.C. §§ 1391(b) and (c); and because Defendants are subject to personal jurisdiction herein

4. Plaintiff says that all conditions precedent to the maintenance of this action have heretofore been performed or have been waived.

## PARTIES

5. Plaintiff is a resident of Broward County, Florida. During all times relevant to this Complaint, Plaintiff was employed by Defendants as a bartender. Plaintiff was therefore an "employee" as defined by 29 U.S.C. § 203(e) and covered as an individual under the FLSA. To wit: Plaintiff was a bartender who served food and alcohol to the restaurant patrons.

6. Defendant STEAKHOUSE is a corporation organized and existing under and by virtue of the laws of the State of Florida with its principal place of business in Cooper City, Broward County, Florida. STEAKHOUSE has, at all times material hereto, conducted substantial and continuous business within the Southern District of Florida, and is subject to the laws of the United States and the State of Florida.

7. Specifically, STEAKHOUSE is a restaurant and its employees, including Plaintiff, regularly handled goods which were transported across state lines.

8. At all times material to this Complaint, Defendants have had two (2) or more employees who have regularly sold, handled, or otherwise worked on goods and/or materials that have been moved in or produced for commerce.

9. STEAKHOUSE upon knowledge and belief, has gross revenue which exceeds $500,000 for each of the past three (3) years and utilizes goods in the flow of commerce across state lines. STEAKHOUSE is therefore covered as an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(s).

10. Defendant WOLF, who resides in the Southern District of Florida, was, or now is, an owner and/or operator of Defendant STEAKHOUSE.

11. Defendant WOLF acted and acts directly in the interests of STEAKHOUSE in relation to its employees. WOLF had and exercised the authority to hire and fire employees, set the pay rate for the employees, and control the finances and operations of STEAKHOUSE. Thus WOLF was and is an employer within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

12. This case is brought under 29 U.S.C. § 216(b). Defendants employed Plaintiff who was not paid minimum wages for all hours worked and/or overtime for work performed in excess of 40 hours per week from the filing of this complaint, back three years.

## GENERAL ALLEGATIONS

13. Plaintiff was a non-exempt employee of Defendants and is subject to the payroll practices and procedures set forth hereinafter.

14. Plaintiff worked for Defendants from November 2020 until June 6, 2021 as a bartender.

15. Throughout her employment with Defendants, Plaintiff routinely for Defendants five (5) days a week.

16. Plaintiff was generally scheduled to work from 4:00 p.m. to 9:00 p.m. on Sundays; 4:00 p.m. to 10:00 p.m. Tuesdays through Thursdays; and 5:00 p.m. to 11:00 p.m. on Fridays and Saturdays.

17. Towards the end of her employment with Defendants, Plaintiff frequently worked double shifts on the weekends to cover the lunch/brunch and dinner shifts. On the days she worked double shifts, Plaintiff was scheduled to work from 12:00 pm until 11:00 p.m. on Saturdays and 9:00 p.m. on Sundays.

18. Plaintiff was only paid for the hours she was actually scheduled to work. However, Plaintiff was required to report to work at least thirty (30) minutes before every shift to prep and stay as long as necessary to close up the restaurant, usually thirty (30) minutes to (90) minutes beyond her scheduled time.

19. Plaintiff was paid biweekly at an hourly rate of pay of $5.54 during her entire employment with Defendants.

20. Plaintiff was required to share her tips with other employees including the expo person, bussers, cooks, and sometimes others.

21. Starting around February 14, 2021, the owner, WOLF, began closing the restaurant with Plaintiff two to three times a week.

22. When WOLF closed, he claim that the restaurant was missing money at the end of the night.

23. WOLF would then take approximately $20 to $100 of Plaintiff's tips claiming it was reimbursement for her drawer being short.

24. Plaintiff also worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this complaint.

25. At all times pertinent to this action, Defendants failed to comply with 29 U.S.C. §§ 201 – 219 in that Plaintiff performed services for Defendants for which no provision was made to properly pay overtime for those hours worked over forty (40) in a work-week.

26. The Defendants and their representatives knew that Plaintiff was working overtime, and that Federal law requires employees to be compensated at time and one-half per hour for overtime pay.

27. The Defendants maintained complete control over the hours Plaintiff worked and the pay she was to receive.

28. In the course of employment with Defendants, Plaintiff worked the number of hours required of her, but she was not paid time and one-half for all hours worked in excess of forty (40) hours during a workweek.

29. Plaintiff was required to work a double shift approximately two to three times per month starting in approximately April 2021. When Plaintiff was required to work a double shift, she averaged approximately 45-50 work hours per week during the relevant time frame of April 1, 2021 through June 6, 2021.

30. Defendants willfully failed to record all time worked by Plaintiff and willfully misclassified Plaintiff as exempt from overtime.

31. The records, if any, concerning the number of hours actually worked by Plaintiff are in the possession, custody, and control of Defendants.

32. Moreover, Defendants inexplicably stopped deducting federal taxes from Plaintiff's last several paychecks.

33. Upon learning that Defendants were improperly paying her, Plaintiff complained to WOLF and requested that the issues be corrected immediately.

34. Defendants refused Plaintiff's request to properly compensate her or to reinstate the federal tax deduction from her paycheck and continued the improper payroll practices until Plaintiff's separation from Defendants.

35. Due to Defendants' improper payroll practices and failure to properly pay Plaintiff for all the hours she worked including overtime hours, Plaintiff was left with no other alternative than to resign from her employment with Defendants on June 6, 2021.

36. Plaintiff has retained the undersigned firm to prosecute this action on her behalf and has agreed to pay it a reasonable fee for its services.

37. Plaintiff is entitled to her reasonable attorneys' fees and costs if she is the prevailing party in this Action.

## COUNT I – VIOLATION OF FLSA / OVERTIME

38. Plaintiff re-alleges and re-avers paragraphs 1–37 as fully set forth herein.

39. Since the commencement of Plaintiff's employment, Defendants have willfully violated the provisions of §7 of the Act [29 U.S.C. § 207] by employing workers engaged in commerce for workweeks longer than 40 hours without compensating them for their employment in excess of 40 hours at a rate not less than one and one half times the regular rates for which they were employed.

40. Specifically, Plaintiff worked approximately 45-50 hours during each work week in which she worked a double shift, approximately two to three times per month from April 2021 to June 2021, but was only compensated her regular rate rather than one and one half times her regular rate.

41. Plaintiff was not exempt from the overtime provision of the Act pursuant to the provisions of the Act, 29 U.S.C. § 213(a), in that she was neither bona fide executive, administrative, or professional employees.

42. Defendants have knowingly and willfully failed to pay Plaintiff at time and one half of her regular rate of pay for all hours worked in excess of forty (40) per week during the relevant time period.

43. By reason of the said intentional, willful and unlawful acts of Defendants, Plaintiff has suffered damages plus incurring costs and reasonable attorneys' fees.

44. Defendants knew Plaintiff was not exempt from overtime but refused to pay her at a rate of time and one-half her regular rate.

45. As a result of Defendants' willful violations of the Act, Plaintiff is entitled to liquidated damages.

46. Plaintiff has retained the undersigned counsel to represent her in this action, and pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover all reasonable attorneys' fees and costs incurred in this action from Defendants.

**WHEREFORE**, for workweeks within three (3) years of the filing of this Complaint, Plaintiff MICHELLE RUBENSTEIN demands judgment for:

a) Overtime payment, wages, salary, lost benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FLSA.

b) Interest on the amount found due;

c) Liquidated damages;

d) A jury trial on all issues so triable;

e) Assessment against Defendant of reasonable costs and reasonable attorney's fees of this action; and

f) Such other relief as the Court deems just and proper.

### COUNT II: VIOLATION OF FLSA / MINIMUM WAGE

47. Plaintiff re-alleges and re-avers paragraphs 1–37, as fully set forth herein.

48. During the course of Plaintiff's employment with Defendants, Plaintiff was not compensated for all hours that she worked.

49.     Defendants only paid Plaintiff for the hours she was actually scheduled to work but Plaintiff was required to come in prior to and stay later than her scheduled time every day that she worked for Defendants.

50.     Specifically, Plaintiff was required to report to work at least thirty (30) minutes before every shift to prep and stay as long as necessary to close up the restaurant, usually thirty (30) minutes to (90) minutes beyond her scheduled time.

51.     Defendants failed to pay Plaintiff for approximately one to two hours per shift.

52.     Plaintiff worked for Defendants five days a week.  Therefore, Defendants failed to pay Plaintiff for approximately five to ten hours per week throughout her entire employment with Defendants.

53.     Plaintiff was paid biweekly at an hourly rate of pay of $5.54[1] during her entire employment with Defendants.

54.     Plaintiff was made to share her tips with other employees such as the expo person, bussers, cooks, etc.

55.     Some of the employees that Plaintiff had to share tips with were employees who do not customarily or regularly receive tips.

56.     As such, Defendants were not permitted to claim a tip credit under Section 3(m) of the FLSA and should have paid Plaintiff at the applicable federal minimum wage of at least $7.25 per hour for all hours she worked for Defendants.

57.     The Defendants willfully violated §§ 6 and 15 of the FLSA by failing to compensate Plaintiff at a rate equal to the federal minimum wage for work performed while Defendants employed Plaintiff during the relevant time period.

---

[1] Plaintiff's hourly rate of $5.54 did not account for the raise in Florida's minimum wage and should have been increased to $5.63 on January 1, 2021.

58. As a direct result of Defendants' willful violation of federal laws, Plaintiff has suffered damages, including wages, liquidated damages, and costs and fees associated with this action.

**WHEREFORE**, for workweeks within three (3) years of the filing of this Complaint, Plaintiff MICHELLE RUBENSTEIN requests judgment for:

a) Minimum wage payment, wages, salary, lost benefits, and any other compensation denied or lost to Plaintiff by reason of Defendants' violation of the FLSA.

b) Interest on the amount found due;

c) Liquidated and compensatory damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

d) A jury trial on all issues so triable;

e) Assessment against Defendants of reasonable costs and reasonable attorney's fees of this action; and

f) Such other relief as the Court deems just and proper.

## COUNT III – UNPAID WAGES

59. Plaintiff re-alleges and re-avers paragraphs 1–37, as fully set forth herein.

60. Plaintiff and Defendant entered into an oral agreement whereby Plaintiff performed services as a bartender in exchange for payment from Defendant.

61. According to the agreement, Defendant was to pay the applicable minimum wage for the hours she worked plus tips for her services.

62. Defendants only paid Plaintiff for the hours she was actually scheduled to work but Plaintiff was required to come in prior to and stay later than her scheduled time every day that she worked for Defendants.

63. Specifically, Plaintiff was required to report to work at least thirty (30) minutes before every shift to prep and stay as long as necessary to close up the restaurant, usually thirty (30) minutes to (90) minutes beyond her scheduled time.

64. Defendants failed to pay Plaintiff for approximately one to two hours per shift.

65. Plaintiff worked for Defendants five days a week. Therefore, Defendants failed to pay Plaintiff for approximately five to ten hours per week throughout her entire employment with Defendants.

66. Defendants knew that Plaintiff performed work for the benefit of the company but intentionally failed to pay her for all hours that she worked.

67. In addition to her hourly wages, Defendants improperly withheld some of Plaintiff's earned tips on multiple occasions.

68. As a result of Defendants' failure to compensate Plaintiff properly, she has suffered monetary damages.

69. Further, Plaintiff is also entitled to liquidated damages pursuant to Fla. Stat. § 448.110(6)(c)(1).

**WHEREFORE**, Plaintiff MICHELLE RUBENSTEIN requests judgment against Defendants as follows:

    a) Unpaid wages and tips in the amount to be determined by the Court;

    b) Liquidated damages pursuant to Fla. Stat. § 448.110(6)(c)(1);

    c)    Plaintiff's cost of suit, together with reasonable attorney's fees incurred in this action; and

    d)    Such other relief as the Court deems just and proper.

## COUNT IV – VIOLATION OF FLSA
## (RETALIATION)

70.    Plaintiff re-alleges and re-avers paragraphs 1–37, as fully set forth herein.

71.    29 U.S.C. §218c states:

> (a) Prohibition – No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has-
> * * *
> (5) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this title (or amendment), or any order, rule, regulation, standard, or ban under this title (or amendment).

72.    Plaintiff complained to WOLF that she was not being properly compensated under the FLSA.

73.    Following her objection to Defendants' improper payroll practices, Defendants retaliated against Plaintiff by making her working conditions so intolerable that she was forced to resign on June 6, 2021.

74.    Specifically, Defendant WOLF, on multiple occasions, falsely claimed that that Plaintiff's drawer was short at the end of her shift and withheld $20-$100 of her tips as alleged reimbursement.

75.    Defendants also refused to deduct federal taxes from Plaintiff's paychecks for approximately the last twelve (12) weeks of Plaintiff's employment with Defendants.

76. As a direct result of Defendants' retaliation for Plaintiff's objections to their payroll practices, Plaintiff has suffered monetary damages.

**WHEREFORE**, Plaintiff MICHELLE RUBENSTEIN requests judgment for:

a) Back wages, lost benefits, and any other compensation denied or lost to Plaintiff by reason of Defendants' violation of the FLSA.

b) Interest on the amount found due;

c) Liquidated and compensatory damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

d) A jury trial on all issues so triable;

e) Assessment against Defendants of reasonable costs and reasonable attorney's fees of this action; and

f) Such other relief as the Court deems just and proper.

## COUNT V – CONVERSION
## (AGAINST DEFENDANT WOLF)

77. Plaintiff re-alleges and re-avers paragraphs 1–37, as fully set forth herein.

78. Plaintiff and Defendants entered into an oral agreement wherein Plaintiff would provide services as a bartender and Defendants would compensate Plaintiff by way of wages and tips.

79. Plaintiff performed bartending services for Defendant from November 2020 until June 6, 2021 wherein patrons of the restaurant would tip Plaintiff for her services.

80. At the end of every shift, the manager would payout Plaintiff's her portion of the tips she earned for the services she rendered that day.

81. Defendant WOLF, in his role as a manager, began closing with Plaintiff two to three times a week beginning around February 14, 2021, until her separation on June 6, 2021.

82. On the days WOLF closed with Plaintiff, WOLF claimed Plaintiff's drawer was missing money.

83. To allegedly reimburse STEAKHOUSE for the missing money, WOLF kept approximately $20-$100 of Plaintiff's tips each night he made such an allegation.

84. No other closing manager ever accused Plaintiff of being short in her drawer except for WOLF.

85. The tips earned by Plaintiff were capable of identification as her property.

86. WOLF should have provided the entire amount of tips Plaintiff earned at the end of her shift.

87. WOLF wrongfully asserted dominion over Plaintiff's property by failing to give her the entire amount of tips at the end of the night when she earned them.

88. Therefore, Plaintiff was wrongfully deprived of her property.

89. As a result of WOLF'S conversion of Plaintiff's property, she has suffered monetary damages.

**WHEREFORE**, Plaintiff MICHELLE RUBENSTEIN requests judgment against Defendants as follows:

    a) Fair market value of the unpaid tips in the amount to be determined by the Court;

    b) Interest on the amount found due;

    c) Plaintiff's cost of suit, together with reasonable attorney's fees incurred in this action; and

    d) Such other relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff MICHELLE RUBENSTEIN and others similarly situated hereby demand a trial by jury on all issues contained herein so triable as a matter of right.

Dated: October 26, 2021.

                                                   **LAW OFFICES OF CHARLES EISS, P.L.**
                                                   Attorneys for Plaintiff
                                                   7951 SW 6th Street, Suite 112
                                                   Plantation, Florida 33324
                                                   (954) 914-7890 (Office)
                                                   (855) 423-5298 (Facsimile)

              By:    /s/ Charles Eiss
                          CHARLES M. EISS, Esq. (FBN: 612073)
                          chuck@icelawfirm.com
                          SHANNA WALL, Esq. (FBN: 0051672)
                          shanna@icelawfirm.com